## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

MARION KILER,

                Plaintiff,

       v.

HP INC.,

                Defendant.

Case No. 19-CV-00917

**ORAL ARGUMENT
REQUESTED**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## <u>MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER</u>

**MORGAN, LEWIS & BOCKIUS LLP**

Michael F. Fleming
101 Park Avenue
New York, NY 10178
T: (212) 309-6207
F: (212) 309-6001
michael.fleming@morganlewis.com

Stephanie Schuster*
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T: (202) 373-6595
F: (202) 739-3001
stephanie.schuster@morganlewis.com

*Application for admission *pro hac vice* to be
filed

*Counsel for Defendant*

Dated: August 5, 2019

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

ARGUMENT ....................................................................................................................... 2

     I.    This Action Should Be Dismissed Because the Court Lacks Personal
          Jurisdiction Over HP ................................................................................................ 2

          A.    HP Is Not Subject to General Jurisdiction in New York .................................... 3

          B.    Kiler Fails to Demonstrate Specific Jurisdiction Over HP ................................ 4

     II.   Alternatively, This Action Should Be Transferred to the Northern District
          of California ............................................................................................................. 8

          A.    The Forum-Selection Clause in HP's Terms of Use Should Be Enforced .......... 8

          B.    The Northern District of California Is a Capable, More Convenient Forum ..... 12

CONCLUSION .................................................................................................................. 15

**Cases**

*Access Now, Inc. v. Otter Prods., LLC*,
    280 F. Supp. 3d 287 (D. Mass. 2017) .....................................................................7

*Access Now, Inc. v. Sportswear, Inc.*,
    2018 WL 1440315 (D. Mass. 2018) ........................................................................6

*Andrews v. AC Roman & Assocs.*,
    914 F. Supp. 2d 230 (N.D.N.Y. 2012) ..................................................................13

*Atl. Marine Constr. Co. v. U.S. Dist. Ct.*,
    571 U.S. 568 (2013) ................................................................................................8

*Atl. Recording Corp. v. Project Playlist, Inc.*,
    603 F. Supp. 2d 690 (S.D.N.Y. 2009) ....................................................................8

*Ayala-Branch v. Tad Telecom*,
    197 F. Supp. 2d 13 (S.D.N.Y. 2002) ....................................................................13

*In re Bean*,
    251 B.R. 196 (E.D.N.Y. 2000) .............................................................................11

*Berkson v. Gogo LLC*,
    97 F. Supp. 3d 359 (E.D.N.Y. 2015) .................................................................9, 11

*Bristol-Myers Squibb Co. v. Superior Court*,
    137 S. Ct. 1773 (2017) ....................................................................................3, 4, 5

*Butcher v. Gerber Prod. Co.*,
    1998 WL 437150 (S.D.N.Y. 1998) .......................................................................15

*Chen v. Arts Nail Putnam Valley Inc.*,
    2017 WL 3017712 (S.D.N.Y. 2017) ...............................................................12, 13

*City of Pontiac Gen. Emps. Ret. Sys. v. Dell Inc.*,
    2015 WL 12659925 (S.D.N.Y. 2015) ..................................................................13

*Cower v. Albany Law Sch.*,
    2005 WL 1606057 (S.D.N.Y. 2005) .....................................................................15

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) .......................................................................................3, 4, 12

*Farmer v. Fed. Bureau of Prisons*,
    2015 WL 1439871 (E.D.N.Y. 2015) .....................................................................12

*Fjeta v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012) ................................................................................8

*Friedman v. Bloomberg L.P.*,
    884 F.3d 83 (2d Cir. 2017) ......................................................................................................2

*Gomes v. ANGOP, Angola Press Agency*,
    2012 WL 3637453 (E.D.N.Y. 2012) ....................................................................................3

*Int'l Council of Shopping Ctrs. v. Info Quarter, LLC*,
    2018 WL 4284279 (S.D.N.Y. 2018) ....................................................................................9

*Meyer v. Uber Techs.*,
    868 F.3d 66 (2d Cir. 2017) ......................................................................................................8

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016) ..................................................................................................8

*Plixer Int'l v. Scrutinizer GmbH*,
    293 F. Supp. 3d 232 (D. Me. 2017) .....................................................................................7

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
    329 F.3d 64 (2d Cir. 2003) ....................................................................................................15

*Ramos de Almeida v. Powell*,
    2002 WL 31834457 (S.D.N.Y. 2002) ................................................................................15

*Register.com, Inc. v. Verio, Inc.*,
    356 F.3d 393 (2d Cir. 2004) ..................................................................................................9

*Ring v. Exec. Jet Aviation, Inc.*,
    2001 WL 492428 (S.D.N.Y. 2001) ....................................................................................15

*RLP Ventures v. All Hands Instruction NFP*,
    2019 WL 1316030 (S.D.N.Y. 2019) ....................................................................................5

*Snow Sys. v. Sneller's Landscaping, LLC*,
    2019 WL 1317746 (N.D. Ill. 2019) ......................................................................................7

*Tole v. Glenn Miller Productions*,
    2013 WL 4006134 (S.D.N.Y. 2013) ..................................................................................14

*Veal v. Geraci*,
    23 F.3d 722 (2d Cir. 1994) ....................................................................................................11

*Walden v. Fiore*,
    571 U.S. 277 (2014) ..............................................................................................3, 4, 6, 7

*Waldman v. PLO,*
    835 F.3d 317 (2d Cir. 2016)............................................................6, 7

**Statutes & Rules**

28 U.S.C. § 1391(b)(1) .....................................................................12

28 U.S.C. § 1391(c)(2).....................................................................12

28 U.S.C. § 1404(a) ...............................................................2, 12, 15

Fed. R. Civ. P. 45(c)(1)(A) ..............................................................13

## INTRODUCTION

Plaintiff Marion Kiler claims HP Inc. ("HP") violated Title III of the Americans with Disabilities Act ("ADA") and related New York laws by failing to design and code www.store.hp.com for compatibility with screen readers. Kiler's claims are meritless, but they also do not belong in this Court. Most fundamentally, Kiler does not—and could not—allege facts sufficient to warrant this Court's exercise of personal jurisdiction over HP in this case. A defendant who is not incorporated in the forum state, who does not maintain its principal place of business in the forum state, and who otherwise has not purposefully availed itself of the forum state in connection with the particular dispute cannot be sued in the forum state. That is settled personal-jurisdiction jurisprudence, and it precludes Kiler's suit against HP in this Court. HP is not at home in New York (so general jurisdiction is lacking), and the HP conduct related to Kiler's claims—the allegedly deficient design and coding of www.store.hp.com—occurred outside of New York (so specific jurisdiction is lacking).

Even still, if the Court concludes it has personal jurisdiction over HP, this action should be transferred to the Northern District of California for two, independently sufficient reasons. *First*, the Terms of Use that govern use of HP's website designate courts in Santa Clara County as the exclusive forum for disputes relating to the website. Kiler had at least constructive notice of HP's Terms of Use because she is no average consumer-litigant; Kiler litigates website cases like a business, filing more than 80 nearly identical website-accessibility lawsuits in federal courts around the country. Prolific and knowledgeable litigants, like Kiler, ought to be deemed to have constructive notice of the terms and conditions that govern a website's use.

*Second*, the Northern District of California is the more convenient and appropriate forum for this litigation. Not only did all of HP's alleged conduct occur outside New York; the alleged

conduct occurred or was overseen from HP's headquarters in Palo Alto, California. The relevant evidence is located there, and so are the relevant witnesses. Requiring HP personnel to travel to New York for trial-related activities threatens to disrupt HP's operations, whereas Kiler, through her many lawsuits, has shown a willingness to litigate in other forums when it suits her.

For these reasons and others, discussed below, the complaint should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction or, in the alternative, this action should be transferred to the Northern District of California on forum non conveniens grounds pursuant to 28 U.S.C. § 1404(a).

## BACKGROUND

Kiler claims she is unable to use HP's website, www.store.hp.com, because the website's "design and coding" are allegedly "deficient" for individuals with vision impairments. Compl. ¶ 40. Specifically, Kiler alleges that HP's website was not designed to fully comply with certain standards, the Web Content Accessibility Guidelines 2.0. *Id.* ¶¶ 38–42. Owing to this allegedly "deficient design and coding" by HP, Kiler asserts claims for violations of Title III of the ADA and similar New York statutes. *Id.* at 13–23. She seeks injunctive relief and monetary damages on her own behalf and on behalf of a putative class of "all legally blind individuals in the United States who have attempted to access the Website" and a putative subclass of "all legally blind individuals in New York State who have attempted to access the Website." *Id.* ¶¶ 21–22.

## ARGUMENT

## I.   THIS ACTION SHOULD BE DISMISSED BECAUSE THE COURT LACKS PERSONAL JURISDICTION OVER HP.

Courts may not exercise personal jurisdiction over a defendant unless doing so comports with due process. *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 90 (2d Cir. 2017). Due process recognizes two types of personal jurisdiction: general (all-purpose) jurisdiction and specific

(case-linked) jurisdiction. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779–80 (2017). General jurisdiction exists only when a defendant is "at home" in the forum. *Daimler AG v. Bauman*, 571 U.S. 117, 137–39 (2014). If a corporation is at home in a state, courts in that state may exercise personal jurisdiction over the corporation for any cause of action. *Id.* at 138. Specific jurisdiction exists only when the plaintiff's specific claims "arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers*, 137 S. Ct. at 1780. In other words, the defendant's own "suit-related conduct must create a substantial connection with the forum State," *Walden v. Fiore*, 571 U.S. 277, 284 (2014), or specific jurisdiction does not exist.

The plaintiff bears the burden of establishing personal jurisdiction over the defendant. *Gomes v. ANGOP, Angola Press Agency*, 2012 WL 3637453, at *7 (E.D.N.Y. 2012) (Irizarry, J.). Kiler has failed to carry that burden here. In support of personal jurisdiction, Kiler alleges only that (i) she "attempted to browse and purchase products on the Website" from her home in Kings County, New York; (ii) HP "has been and is committing the acts alleged [in the complaint] … and has been and is causing injury to consumers in" this District; and (iii) HP "regularly engages in commerce and marketing in" this District. Compl. ¶ 14. As explained below, these allegations are not sufficient to support the exercise of general or specific jurisdiction over HP in this case. The complaint must therefore be dismissed under Rule 12(b)(2).

### A.     HP Is Not Subject to General Jurisdiction in New York.

General jurisdiction exists only where the defendant is at home. *Daimler*, 571 U.S. at 122. The Supreme Court has made clear that a corporation is not at home in every state in which it merely "engages in a substantial, continuous, and systematic course of business." *Id.* at 138. Rather, in all but exceptional cases, a corporation's "home" is limited to its "place of incorporation and its principal place of business," *id.* at 137–38 & n.19. "Those affiliations have the virtue of being unique … [and] easily ascertainable." *Id.* at 137.

HP is not at home in New York. HP neither is incorporated under the laws of New York nor maintains its principal place of business in New York. Declaration of Angela Gustafson ("Gustafson Decl.") ¶¶ 3–4.[1] And Kiler does not allege any facts that would rank this case as an "exceptional case" for exercising general jurisdiction over HP. On the contrary, Kiler offers only the conclusory allegation that HP "regularly engages in commerce and marketing in" this District, Compl. ¶ 14, which, as a matter of law, is insufficient to permit the Court's exercise of general jurisdiction over HP, *see Daimler*, 571 U.S. at 138. Accordingly, the Court lacks general personal jurisdiction.

**B.      Kiler Fails to Demonstrate Specific Jurisdiction Over HP.**

Specific jurisdiction lies only when the plaintiff's specific claims arise out of the defendant's contacts with the forum. *Bristol-Myers*, 137 S. Ct. at 1781. The inquiry is sharply "*defendant*-focused," such that specific jurisdiction cannot arise from "contacts between the *plaintiff* ... and the forum." *Walden*, 571 U.S. at 284 (emphases added). Kiler's claims do not arise out of HP's contacts with New York, so this Court lacks specific jurisdiction.

The only HP conduct alleged to give rise to Kiler's claims relates to the "design and coding" of www.store.hp.com. Compl. ¶ 40. According to Kiler, HP's website violates the ADA and related state laws because it was allegedly designed and coded in a manner inconsistent with certain guidelines for making websites accessible. *Id.* ¶¶ 38–42. For example, Kiler claims that HP's website "requires the use of a mouse to select essential content," *id.* ¶ 40, and lacks "sufficiently descriptive text and/or context on links," *id.* ¶ 41. Which is to say, this case is about *how* HP allegedly "design[ed], construct[ed], maintain[ed] and/or own[ed]" its website. *Id.* ¶ 2;

---

[1]      Kiler alleges that HP is a Delaware corporation with its principal place of business in Delaware. Compl. ¶ 18. That is half right: HP is a Delaware corporation with its principal place of business in California. Gustafson Decl. ¶¶ 3–4.

*see id.* ¶ 50 (alleging discrimination in the way HP is "constructing and maintaining" the website); *id.* ¶ 76 (same); *id.* ¶ 100 (same); *id.* ¶ 51 (alleging discrimination due to the "standards, criteria, and methods of administration" HP uses to construct and maintain its website). And that is the only "*relevant* conduct" for personal jurisdiction purposes. *Bristol-Myers*, 137 S. Ct. at 1781 (emphasis in original). Indeed, were the website designed and coded differently, Kiler would have no complaints. *See* Compl. ¶ 111.

The website was not designed, coded, or otherwise maintained in New York, *see* Gustafson Decl. ¶¶ 7–10, and Kiler does not allege otherwise. Nor does Killer allege that the design, coding, or maintenance of the website was specifically targeted at New York. She alleges exactly the opposite: that www.store.hp.com "is a service or benefit offered by [HP] throughout the United States." Compl. ¶ 32. Because HP's "relevant conduct occurred entirely" outside New York, "the mere fact that [its] conduct affected [a] plaintiff[] with connections to [New York does] not suffice to authorize jurisdiction." *Bristol-Myers*, 137 S. Ct. at 1781–82.

Kiler points to no HP activity whatsoever that both took place in New York and gives rise to this suit. Without elaboration, Kiler alleges that HP "regularly engages in commerce and marketing" in this District. Compl. ¶ 14. Even if Kiler had alleged some facts to make that conclusory allegation plausible (and she has not), her claims in this case have nothing to do with vague notions of "commerce and marketing." Her claims concern HP's website and how it was built. *See also RLP Ventures v. All Hands Instruction NFP*, 2019 WL 1316030, at *6 (S.D.N.Y. 2019) ("The mere conclusory allegation that [a defendant] 'advertises and solicits business' through a 'website' and unnamed 'promotional activities' has been held to be insufficient to establish a material act or omission in the District.").

Kiler also alleges the she and other individuals with disabilities in New York have been harmed by the design and coding of HP's website because she and others have attempted to access the website while in New York. Compl. ¶ 14. But, HP cannot be subject to specific jurisdiction in New York simply because Internet-users can call up www.store.hp.com from within New York (and every other state). For that conduct *of Internet-users* is not conduct *of HP* in the forum. *See Walden*, 571 U.S. at 284 (relationship between defendant's suit-related conduct and the forum "must arise out of contacts that the defendant *himself* creates with the forum") (emphasis in original). Indeed, were a plaintiff's mere visit to a company's website sufficient to establish specific jurisdiction in whichever state the plaintiff happens to be at the time, nearly *every* company would be subject to specific jurisdiction in *any* state. That result is plainly at odds with the Supreme Court's decision in *Walden*.

The three out-of-circuit decisions Kiler cites (*see* Compl. ¶ 14) run directly counter to the Supreme Court's holdings in *Walden* (and its progenitors), which the courts did not cite or otherwise reconcile with their conclusions. This Court should not follow suit. The first case was a web-accessibility case, and the court exercised specific jurisdiction because *the plaintiff* "*attempted to and intends to access* [the defendant's] website from within the forum." *Access Now, Inc. v. Sportswear, Inc.*, 2018 WL 1440315, at \*4 (D. Mass. 2018) (emphasis added). *Walden* forbids that sort of analysis, which "impermissibly allows a *plaintiff's* contacts with the defendant and forum to drive the jurisdictional analysis." *Walden*, 571 U.S. at 289 (emphasis added); *accord Waldman v. PLO*, 835 F.3d 317, 337 (2d Cir. 2016) ("Pursuant to *Walden*, it is insufficient to rely on a defendant's random, fortuitous, or attenuated contacts *or on the unilateral activity of a plaintiff* with the forum to establish specific jurisdiction.") (emphasis added).

The second case was also a web-accessibility case; the court found specific jurisdiction because the plaintiff's alleged "harm—the denial of access to the website—occurred in the" forum. *Access Now, Inc. v. Otter Prods., LLC*, 280 F. Supp. 3d 287, 292–93 (D. Mass. 2017). That decision violates *Walden* too, for the Supreme Court held "mere injury to a forum resident," even if caused by the defendant, "is not a sufficient connection to the forum." *Walden*, 571 U.S. at 290; *accord Snow Sys. v. Sneller's Landscaping, LLC*, 2019 WL 1317746, at *3 (N.D. Ill. 2019) ("[T]he Supreme Court in *Walden v. Fiore* … flatly rejected the view that injury in the forum is enough."). When a plaintiff would experience the same alleged harm in New York, "California, Mississippi, or wherever [the plaintiff] might have traveled," the location of that harm is jurisdictionally irrelevant. *Walden*, 571 U.S. at 290. That is the case here.

The third case was a trademark infringement action where the court found specific jurisdiction in the United States over a German corporation because it operated a website available to Internet-users in the United States and "knowingly interacted with residents of the forum [country] via its website." *Plixer Int'l v. Scrutinizer GmbH*, 293 F. Supp. 3d 232, 242 (D. Me. 2017). *Walden* forecloses that analysis, as well. As the Second Circuit put it: "the facts of *Walden* … suggest that a defendant's mere knowledge that a plaintiff resides in a specific jurisdiction would be insufficient to subject a defendant to specific jurisdiction in that jurisdiction if the defendant does nothing in connection with the tort in that jurisdiction." *Waldman*, 835 F.3d at 338.

\*     \*     \*

In short, for specific jurisdiction to lie in this case, *HP's* alleged actions giving rise to *this suit* must have been taken *in New York*. They were not. This Court therefore lacks specific jurisdiction.

**II.    ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA.**

**A.    The Forum-Selection Clause in HP's Terms of Use Should Be Enforced.**

Use of the website, www.store.hp.com, is subject to HP's Terms of Use, a link to which is posted in the footer of each page on the site.[2]  HP's Terms of Use are a so-called "browsewrap" agreement because they are posted "on [the] website via a hyperlink at the bottom of the screen" and do not require users to click "I agree" or similar language to be bound by them.  *Meyer v. Uber Techs.*, 868 F.3d 66, 75 (2d Cir. 2017).  Rather, in plain text, the Terms of Use explain to users that the Terms "are a legal contract between You and HP … and govern Your use of this website," and that "using this website indicates that you have both read and accept the[] Terms."  Ex. A at 7 (Terms Of Use, available at https://www8.hp.com/us/en/terms-of-use.html).  And most relevant for present purposes, the Terms of Use include the following forum-selection clause: "All lawsuits arising from or relating to … Your use of This Website shall be brought in Federal or State courts located in Santa Clara County, California."  *Id.* at 7.  Santa Clara County is within the Northern District of California.

"[A] valid forum-selection clause should be given controlling weight in all but the most exceptional cases."  *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 568, 581 (2013).  Browsewrap agreements are valid contracts so long as the "website user has actual or constructive notice of the conditions" and continues to use the website.  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233 (2d Cir. 2016).  Litigants who are "prolific" and sophisticated website users and are "repeat players" in the website space ought be to deemed to have at least constructive notice of terms that govern their use of various websites.  *Fjeta v. Facebook, Inc.*, 841 F. Supp. 2d 829, 836,

---

[2]    Because HP's website is the subject of the complaint, the Court may take judicial notice of its content.  *See, e.g.*, *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 704 n.3 (S.D.N.Y. 2009) (collecting cases).

839 (S.D.N.Y. 2012); *cf. Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 401 (2d Cir. 2004).

Usually, these prolific, sophisticated, and repeat players are businesses. *Int'l Council of Shopping*

*Ctrs. v. Info Quarter, LLC*, 2018 WL 4284279, at *3 (S.D.N.Y. 2018). Thus, courts generally

enforce browsewrap terms against "knowledgeable accessors," typically corporations, and have

been hesitant to do so against average consumers. *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 398

(E.D.N.Y. 2015).

But Kiler is not an average consumer. Since May 2017, Kiler has filed at least 82 federal

lawsuits (not counting this one) concerning websites across the country—12 lawsuits in 2017,

49 lawsuits in 2018, and, so far, 21 lawsuits in 2019—often filing multiple lawsuits per week and

even multiple lawsuits on the same day.[3] Based on those filings, Kiler appears to have engaged,

---

[3]       *Kiler v. Per.Se Beauty Inc.*, No. 1:19-cv-04404, ECF No. 1 (E.D.N.Y. July 31, 2019); *Kiler v. Zocdoc, Inc.*, No. 1:19-cv-04155, ECF No. 1 (E.D.N.Y. July 18, 2019); *Kiler v. Thrive Market, Inc.*, No. 1:19-cv-03811, ECF No. 1 (E.D.N.Y. July 1, 2019); *Kiler v. Keith McCurdy LLC*, No. 1:19-cv-03472, ECF No. 1 (E.D.N.Y. June 12, 2019); *Kiler v. Simplehuman, LLC*, No. 1:19-cv-03096, ECF No. 1 (E.D.N.Y. May 23, 2019); *Kiler v. Intuit*, No. 1:19-cv-02678, ECF No. 1 (N.D. Ill. Apr. 22, 2019); *Kiler v. Universal Music Invs.*, No. 1:19-cv-01844, ECF No. 1 (E.D.N.Y. Apr. 1, 2019); *Kiler v. Chi. Detours, Inc.*, No. 1:19-cv-02071, ECF No. 1 (N.D. Ill. Mar. 26, 2019); *Kiler v. Montparnasse 56 Chi. LLC*, No. 1:19-cv-02073, ECF No. 1 (N.D. Ill. Mar. 26, 2019); *Kiler v. WNDR Museum*, No. 1:19-cv-02075, ECF No. 1 (N.D. Ill. Mar. 26, 2019); *Kiler v. Hyatt Corp.*, 1:19-cv-01669, ECF No. 1 (N.D. Ill. Mar. 8, 2019); *Kiler v. Forest Cty. Potawatomi Community*, No. 2:19-cv-00353, ECF No. 1 (E.D. Wisc. Mar. 8, 2019); *Kiler v. Grace & Lace, LLC*, No. 1:19-cv-00928, ECF No. 1 (E.D.N.Y. Feb. 15, 2019); *Kiler v. Trans Union LLC*, No. 1:19-cv-00837, ECF No. 1 (E.D.N.Y. Feb. 12, 2019); *Kiler v. NY & Co. Stores*, No. 1:19-cv-00851, ECF No. 1 (E.D.N.Y. Feb. 12, 2019); *Kiler v. RCN Mgmt.*, No. 1:19-cv-00806, ECF No. 1 (E.D.N.Y. Feb. 8, 2019); *Kiler v. Naadam Inc.*, No. 1:19-cv-00521, ECF No. 1 (E.D.N.Y. Jan. 28, 2019); *Kiler v. Noom, Inc.*, No. 1:19-cv-00522, ECF No. 1 (E.D.N.Y. Jan. 28, 2019); *Kiler v. Taylo Nation, LLC*, No. 1:19-cv-00389, ECF No. 1 (E.D.N.Y. Jan 18, 2019); *Kiler v. Forever 21, Inc.*, No. 1:19-cv-00391, ECF No. 1 (E.D.N.Y. Jan. 18, 2019); *Kiler v. OPI Products, Inc.*, No. 1:19-cv-00199, ECF No. 1 (E.D.N.Y. Jan. 10, 2019); *Kiler v. Coty Inc.*, No. 1:18-cv-06797, ECF No. 1 (E.D.N.Y. Nov. 29, 2018); *Kiler v. Everlast Worldwide, Inc.*, No. 1:18-cv-06419, ECF No. 1 (E.D.N.Y. Nov. 12, 2018); *Kiler v. Poshmark, Inc.*, No. 1:18-cv-06116, ECF No. 1 (E.D.N.Y. Nov. 1, 2018); *Kiler v. Jeffrey Campbell LLC*, No. 1:18-cv-06072, ECF No. 1 (E.D.N.Y. Oct. 30, 2018); *Kiler v. Antonym Cosmetics LLC*, No. 1:18-cv-05978, ECF No. 1 (E.D.N.Y. Oct. 25, 2018); *Kiler v. Richline Grp.*, No. 1:18-cv-05980, ECF No. 1 (E.D.N.Y. Oct. 25, 2018); *Kiler v. Wicked Good Cupcakes, LLC*, No. 1:18-cv-05648, ECF No. 1 (E.D.N.Y. Oct. 10, 2018); *Kiler v. Burrow,*

*Inc.*, No. 1:18-cv-05513, ECF No. 1 (E.D.N.Y. Oct. 2, 2018); *Kiler v. Bissell, Inc.*, No. 1:18-cv-05363, ECF No. 1 (E.D.N.Y. Sept. 24, 2018); *Kiler v. Steel Tech.*, No. 1:18-cv-04874, ECF No. 1 (E.D.N.Y. Aug. 28, 2018); *Kiler v. Comfort Tech. Sys.*, No. 1:18-cv-04826, ECF No. 1 (E.D.N.Y. Aug. 24, 2018); *Kiler v. Superfeet Worldwide, Inc.*, No. 1:18-cv-04828, ECF No. 1 (E.D.N.Y. Aug. 24, 2018); *Kiler v. Phoenix Footwear Grp.*, No. 1:18-cv-04791, ECF No. 1 (E.D.N.Y. Aug. 23, 2018); *Kiler v. Barkbox, Inc.*, No. 1:18-cv-04424, ECF No. 1 (E.D.N.Y. Aug. 6, 2018); *Kiler v. Berkshire Blanket & Home Co.*, No. 1:18-cv-04007, ECF No. 1 (E.D.N.Y. July 12, 2018); *Kiler v. Le Creuset, Inc.*, No. 1:18-cv-03949, ECF No. 1 (E.D.N.Y. July 10, 2018); *Kiler v. Vita-Mix Corp.*, No. 1:18-cv-03950, ECF No. 1 (E.D.N.Y. July 10, 2018); *Kiler v. Whirlpool Corp.*, No. 1:18-cv-03865, ECF No. 1 (E.D.N.Y. July 5, 2018); *Kiler v. Kate Somerville Skincare, LLC*, No. 1:18-cv-05192, ECF No. 1 (E.D.N.Y. Sept. 14, 2018); *Kiler v. Bandier, LLC*, No. 1:18-cv-03776, ECF No. 1 (E.D.N.Y. June 29, 2018); *Kiler v. Vionic Grp.*, No. 1:18-cv-03777, ECF No. 1 (E.D.N.Y. June 29, 2018); *Kiler v. IT Cosmetics, LLC*, No. 1:18-cv-03663, ECF No. 1 (E.D.N.Y. June 25, 2018); *Kiler v. Pipes & Shaw, LLC*, No. 1:18-cv-03671, ECF No. 1 (E.D.N.Y. June 25, 2018); *Kiler v. Nic & Zoe Co.*, No. 1:18-cv-03669, ECF No. 1 (E.D.N.Y. June 25, 2018); *Kiler v. Jack Rogers, LLC*, No. 1:18-cv-03444, ECF No. 1 (E.D.N.Y. June 13, 2018); *Kiler v. Giddy Inc.*, No. 1:18-cv-03044, ECF No. 1 (E.D.N.Y. May 23, 2018); *Kiler v. MeUndies, Inc.*, No. 1:18-cv-03045, ECF No. 1 (E.D.N.Y. May 23, 2018); *Kiler v. Hand & Stone Franchise Corp.*, No. 1:18-cv-02986, ECF No. 1 (E.D.N.Y. May 21, 2018); *Kiler v. Seamore's On Ice, LLC*, No. 1:18-cv-02987, ECF No. 1 (E.D.N.Y. May 21, 2018); *Kiler v. Int'l Culinary Ctr.*, No. 1:18-cv-02688, ECF No. 1 (E.D.N.Y. May 7, 2018); *Kiler v. The Cords & Co.*, No. 1:18-cv-02375, ECF No. 1 (E.D.N.Y. Apr. 23, 2018); *Kiler v. Proenza Shouler*, No. 1:18-cv-02205, ECF No. 1 (E.D.N.Y. Apr. 13, 2018); *Kiler v. Bklyn Commons, LLC*, No. 1:18-cv-02000, ECF No. 1 (E.D.N.Y. Apr. 3, 2018); *Kiler v. Highline Residential, LLC*, No. 1:18-cv-01981, ECF No. 1 (E.D.N.Y. Apr. 2, 2018); *Kiler v. 305 Fitness, Inc.*, No. 1:18-cv-01982, ECF No. 1 (E.D.N.Y. Apr. 2, 2018); *Kiler v. Ample Hills Creamery, Inc.*, No. 1:18-cv-01872, ECF No. 1 (E.D.N.Y. Mar. 28, 2018); *Kiler v. Dr. Martens Airwair, LLC*, No. 1:18-cv-01601, ECF No. 1 (E.D.N.Y. Mar. 15, 2018); *Kiler v. Mackenzie-Childs, LLC*, No. 1:18-cv-01603, ECF No. 1 (E.D.N.Y. Mar. 5, 2018); *Kiler v. SMCP, Inc.*, No. 1:18-cv-01505, ECF No. 1 (E.D.N.Y. Mar. 12, 2018); *Kiler v. The Collected Grp.*, No. 1:18-cv-01383, ECF No. 1 (E.D.N.Y. Mar. 6, 2018); *Kiler v. Flywheel Sports, Inc.*, No. 1:18-cv-01208, ECF No. 1 (E.D.N.Y. Feb. 23, 2018); *Kiler v. Sweaty Beauty, Inc.*, No. 1:18-cv-01209, ECF No. 1 (E.D.N.Y. Feb. 23, 2018); *Kiler v. Heritage Home Grp.*, No. 1:18-cv-00941, ECF No. 1 (E.D.N.Y. Feb. 13, 2018); *Kiler v. Rag & Bone Holdings*, No. 1:18-cv-00852, ECF No. 1 (E.D.N.Y. Feb. 8, 2018); *Kiler v. Perpetual Pooch, LLC*, No. 2:18-cv-00420, ECF No. 1 (E.D. Pa. Feb. 1, 2018); *Kiler v. Mario Badescu Skin Care, Inc.*, No. 1:18-cv-00640, ECF No. 1 (E.D.N.Y. Jan. 30, 2018); *Kiler v. New Deal, LLC*, No. 1:18-cv-00305, ECF No. 1 (E.D.N.Y. Jan. 17, 2018); *Kiler v. Cubesmart, LP*, No. 1:18-cv-00130, ECF No. 1 (E.D.N.Y. Jan. 9, 2018); *Kiler v. Delta Galil, Inc.*, No. 1:18-cv-00132, ECF No. 1 (E.D.N.Y. Jan. 9, 2018); *Kiler v. Paper Source, Inc.*, No. 1:17-cv-06832, ECF No. 1 (E.D.N.Y. Nov. 21, 2017); *Kiler v. Madison Avenue Eye Care Ltd.*, No. 1:17-cv-07409, ECF No. 1 (S.D.N.Y. Sept. 28, 2017); *Kiler v. Vitamin World, Inc.*, No. 1:17-cv-05612, ECF No. 1 (E.D.N.Y. Sept. 26, 2017); *Kiler v. One Medical Grp.*, No. 1:17-cv-05626, ECF No. 1-1 (E.D.N.Y. Sept. 26, 2017); *Kiler v. Osswald Inc.*, No. 1:17-cv-03799, ECF No. 1 (E.D.N.Y. June 23, 2017); *Kiler v. DZ Restaurants, Inc.*, No. 1:17-cv-03558, ECF No. 1 (E.D.N.Y. June 13, 2017); *Kiler v. Mosex Exhibit LLC*, No. 2:17-cv-03110, ECF No. 1 (E.D.N.Y. May 23, 2017); *Kiler v. WNY Lodging LLC*, No. 2:17-cv-02968, ECF No. 1 (E.D.N.Y.

and continues to engage, two different law firms to accomplish her prolific website litigation: Shaked Law Group, PC, and the Lee Litigation Group, PLLC, which represents her in this case. Not one of these 80-plus lawsuits appears to have yielded a decision—all were dismissed either before or shortly after a response to the complaint was filed.

In this way, Kiler operates like a business litigating website cases rather than a typical consumer. She is a prolific website user and prolific website litigant, at all times counseled by attorneys from one law firm or another. Given her litigation history, the resources available to her, and the experience of her counsel, it is simply improbable to say Kiler had no inkling that her use of HP's website was subject to terms and conditions. Thus, like any other business litigant, Kiler is a "knowledgeable accessor" and should be deemed to have had constructive notice of HP's Terms of Use. *Berkson*, 97 F. Supp. 3d at 398. Moreover, Kiler's counsel, who has experience litigating similar cases (*see* Compl. ¶ 27), presumably investigated the website before filing the complaint and thereby gained actual or constructive notice of the Terms of Use. That means Kiler had actual or constructive notice, too. *See Veal v. Geraci*, 23 F.3d 722, 725 (2d Cir. 1994) (client "has notice of a fact if his [attorney] has knowledge of the fact, reason to know it or should know it, or has been given a notification of it"); *In re Bean*, 251 B.R. 196, 201 (E.D.N.Y. 2000) ( "[A]n attorney's actual or constructive notice is imputed to the client."). With that notice, Kiler used HP's website anyway, *see* Compl. ¶¶ 17, 39–43, 46, binding herself to the Terms of Use, *see* Ex. A at 1. This action should therefore be transferred to the Northern District of California consistent with the forum-selection clause in the Terms of Use.

---

May 16, 2017); *Kiler v. Greenwich Vill. Funeral Home, Inc.*, No. 1:17-cv-03692, ECF No. 1 (S.D.N.Y. May 16, 2017); *Kiler v. Genesee Grande, LLC*, No. 1:17-cv-02611, ECF No. 1 (E.D.N.Y. May 2, 2017); *Kiler v. Jefferson Clinton Commons, LLC*, No. 1:17-cv-02612, ECF No. 1 (E.D.N.Y. May 2, 2017); *Kiler v. Brooklyn Botanical Garden*, No. 1:17-cv-02619, ECF No. 1 (E.D.N.Y. May 2, 2017).

**B.    The Northern District of California Is a Capable, More Convenient Forum.**

Even without the forum-selection clause, this Court has discretion to transfer an action (a) to another district in which the action "might have been brought," (b) so long as transfer promotes "the convenience of parties and witnesses" and is "in the interest of justice" 28 U.S.C. § 1404(a); *see Chen v. Arts Nail Putnam Valley Inc.*, 2017 WL 3017712, at *2 (S.D.N.Y. 2017).

Transferring this action to the Northern District of California readily satisfies both requirements. An action "might have been brought" in any district where venue is proper. *See Farmer v. Fed. Bureau of Prisons*, 2015 WL 1439871, at *9 (E.D.N.Y. 2015) (Irizarry, J.). A district in which a corporate defendant is subject to personal jurisdiction is a proper venue. 28 U.S.C. § 1391(b)(1), (c)(2). Because its principal place of business is in Palo Alto, California, HP is subject to general personal jurisdiction in the Northern District of California. *See Daimler*, 571 U.S. at 137–39.

Whether transfer would "promote the convenience of parties and witnesses and would be in the interests of justice" is a "case-specific analysis" guided by a "non-exhaustive list of factors, none of which is dispositive: (1) the convenience of the witnesses, (2) the convenience of the parties, (3) the location of relevant documents and the relative ease of access to sources of proof, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances." *Farmer*, 2015 WL 1439871, at *9.

The key factors in this analysis weigh in favor of transfer to the Northern District of California because this action concerns HP's design, coding, and maintenance of www.store.hp.com. *See supra*, pp. 4–5.

- The locus of the operative facts (**Factor 4**) is the place where those activities took place. *See Chen*, 2017 WL 301772, at *4. While HP personnel in Mexico, Singapore, India, Texas, and Oregon play a role, the design, coding, and maintenance of the website is managed from HP's headquarters in Palo Alto, in the Northern District of California. Gustafson Decl. ¶¶ 8–9.

- HP personnel with primary management responsibilities over the HP website are based in Palo Alto. *Id.* ¶ 8 Thus, the relevant evidence (**Factor 3**) and non-party witnesses (**Factor 1**) are located within the Northern District of California. Transfer would minimize disruptions in HP's business due to its managerial personnel having to travel to New York for trial-related activities. *See e.g.*, *Andrews v. AC Roman & Assocs.*, 914 F. Supp. 2d 230, 240 (N.D.N.Y. 2012) (granting motion to transfer where employee-witness travel would lead to "the potential disruption" of defendant's business); *City of Pontiac Gen. Emps. Ret. Sys. v. Dell Inc.*, 2015 WL 12659925, at *5 (S.D.N.Y. 2015) (same, where "lengthy proceedings in New York are more likely to lead to some disruption to [defendant's] day-to-day operations").

- Relevant former HP personnel are likely to still reside in and around Palo Alto, within the Northern District of California's subpoena power but beyond this Court's (**Factor 5**). *See* Fed. R. Civ. P. 45(c)(1)(A); *Ayala-Branch v. Tad Telecom*, 197 F. Supp. 2d 13, 15 (S.D.N.Y. 2002) (granting motion to transfer, and noting that some of the potential witnesses were "non-party witnesses who may be unwilling to travel to this New York District and who are clearly beyond the subpoena power of this Court"); *see also Chen*, 2017 WL 301772, at *3 (convenience of non-party witnesses "is accorded more weight than [the convenience] or party witnesses").

- While trial would likely proceed efficiently in either court (**Factor 9**), data from the Administrative Office of U.S. Courts shows that judges in the Northern District of California have less congested dockets than judges in this Court (12,393 and 10,156 pending cases, respectively) and, accordingly, hold trials more quickly (median 42 months and median 28.4 months from filing, respectively). U.S. DISTRICT COURTS – NATIONAL JUDICIAL CASELOAD PROFILE, ADMINISTRATIVE OFFICE OF U.S. COURTS (Mar. 2019).[4]

Some of the factors are in equipoise. HP resides in California, while Plaintiff resides in New York, so neither forum is clearly more convenient for the parties (**Factor 2**). This Court and the Northern District of California are equally capable of resolving Plaintiffs' federal and New York law claims (**Factor 7**). *See, e.g.*, *Tole v. Glenn Miller Productions*, 2013 WL 4006134, at *5 (S.D.N.Y. 2013) ("[T]his factor is generally given little weight in federal courts because federal courts are deemed capable of applying the substantive law of other states. Thus, there is nothing to indicate that a federal court in Florida is incapable of applying New York state law to the instant dispute."). And while HP is not aware of Kiler's means (**Factor 6**), public records show that Kiler, represented by the same counsel that represents her in this case, has filed at least seven federal actions outside New York in the past two years,[5] and that her counsel regularly litigates on behalf of various plaintiffs in courts around the country, including the Northern District of California.[6]

---

[4]     www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2019.pdf.

[5]     *Kiler v. Intuit*, No. 1:19-cv-02679, ECF No. 1 (N.D. Ill. Apr. 22, 2019); *Kiler v. Chi. Detours Inc.*, No. 1:19-cv-02071, ECF No. 1 (N.D. Ill. Mar. 26, 2019); *Kiler v. Montparnasse 56 Chi. LLC*, No. 1:19-cv-02073, ECF No. 1 (N.D. Ill. Mar. 26, 2019); *Kiler v. WNDR Museum*, No. 1:19-cv-02075, ECF No. 1 (N.D. Ill. Mar. 26, 2019);; *Kiler v. Hyatt Corp.*, No. 19-cv-1669, ECF No. 1 (N.D. Ill. Mar. 8, 2019); *Kiler v. Forest Cty. Potawatomi Community*, No. 2:19-cv-00353, ECF No. 1 (E.D. Wisc. Mar. 8, 2019); *Kiler v. Perpetual Pooch, LLC*, No. 2:18-cv-00420, ECF No. 1 (E.D. Pa. Feb. 1, 2018).

[6]     *See, e.g.*, *Vassigh v. Bai Brands LLC*, No. 4:14-cv-05127, ECF No. 1 (N.D. Cal. Nov. 2014); *Moore v. Trader Joe's Co.*, No. 4:18-cv-04418, ECF No. 1 (N.D. Cal. July 2018); *Joslin v. Clif Bar & Co.*, No. 4:18-cv-04941, ECF No. 1 (N.D. Cal. Aug. 2018); *Flolo v. Cucina & Amore*

That leaves Kiler's choice of forum (**Factor 8**). This factor weighs against transfer in every case, but the "degree of deference assigned to plaintiff's choice depends on the specific facts of the case and may be viewed as operating along a sliding scale." *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 71 (2d Cir. 2003). A greater connection between the action and the forum warrants greater deference to the plaintiff's choice and vice-versa. *Id.* The only connection between this action and this forum is the fact that Kiler lives in Kings County and called up the website from her home. That tenuous connection, when all the challenged conduct occurred elsewhere, merits minimal deference to Kiler's choice of forum. *See, e.g.*, *Cower v. Albany Law Sch.*, 2005 WL 1606057, at *3 (S.D.N.Y. 2005); *Ramos de Almeida v. Powell*, 2002 WL 31834457, at *2 (S.D.N.Y. 2002); *Ring v. Exec. Jet Aviation, Inc.*, 2001 WL 492428, at *2 (S.D.N.Y. 2001); *Butcher v. Gerber Prod. Co.*, 1998 WL 437150, at *8 (S.D.N.Y. 1998).

To sum up, Factors 1, 3, 4, 5, and 9 favor the Northern District of California; Factors 2, 6, and 7 favor neither forum; and only Factor 8 favors this forum but only minimally. Thus, the balance of the relevant factors favor transfer to the Northern District of California.

## CONCLUSION

This action should be dismissed for lack of personal jurisdiction under Rule 12(b)(2). Alternatively, if the Court concludes it has personal jurisdiction, this action should be transferred to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

---

*Inc.*, No. 3:18-cv-06374, ECF No. 1 (N.D. Cal. Oct. 2018); *Manier v. Juice Beauty, Inc.*, No. 3:18-cv-06834, ECF No. 1 (N.D. Cal. Nov. 2018); *Sponchiado v. Apple Inc.*, No. 4:18-cv-07533, ECF No. 1 (N.D. Cal. Dec. 2018); *see also Bratton v. Hershey Co*., 2018 WL 934899 (W.D. Mo. 2018)*; Walker v. Sam's Oyster House, LLC*, 2018 WL 4466076 (E.D. Pa. 2018)*; Hu v. Herr Foods, Inc*., 251 F. Supp. 3d 13 (E.D. Pa. 2017).

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

Dated: August 5, 2019

s/ Michael F. Fleming
Michael F. Fleming
101 Park Avenue
New York, NY 10178
T: (212) 309-6207
F: (212) 309-6001
michael.fleming@morganlewis.com

Stephanie Schuster*
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T: (202) 373-6595
F: (202) 739-3001
stephanie.schuster@morganlewis.com

*Application for admission *pro hac vice* to be filed

*Counsel for Defendant*